**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| HARRY ARMSTRONG | : | Case No. C-1-01-817 |
| Plaintiff | : | (Spiegel, J.; Sherman, M.J.) |
| v. | : | **PLAINTIFF'S MEMORANDUM IN RESPONSE TO** |
| CINCINNATI BELL TELEPHONE | : | **DEFENDANT'S MOTION TO COMPEL** |
| Defendant | : | |

Defendant's Motion is based upon their request for the following information:

A. Information as it relates to a determination of damages due to Plaintiff's loss of health insurance benefits upon his wrongful termination.

B. Defendant's desire to know "how much money does Plaintiff have left from his lump sum retirement he received from Defendant".

C. Copies of Mr. Armstrong's tax returns.

Plaintiff will respond in the above order to Defendant's arguments:

## LOSS OF MEDICAL, DENTAL, AND VISION BENEFITS

Rule 26(c) requires the production of documents or other evidentiary material used to compute a calculation of damages regardless of category.

Plaintiff herein initially represented himself in this matter. As early as October 31, 2002, Defendant's Counsel was made aware that Plaintiff was uncertain as to his health care coverage. The impact of this letter was that Mr. Armstrong did not know if he had health care coverage. (See Attachment #1)

Plaintiff's present Counsel's first letter to Defendant's Counsel was on February 26, 2003 and the health insurance issue was noted. (See Attachment #2)

As a result of that letter, Defendant's Counsel, Katherine Morgan, was advised by Plaintiff's Counsel to have health care information directed to Plaintiff's Counsel's address. Further, Defendant's Counsel advised Plaintiff's Counsel to contact "Benefit One" as to the issue of health insurance.

Plaintiff began receiving "grace period notices" from Benefit One, which required payment of back premiums. (See Attachment #3) This was unknown to Plaintiff. Further, Plaintiff was unaware of his coverage in that he received no information relating to his health care. (See Attachment #1) He believed his coverage was forfeited by his legal action against Defendant.

Plaintiff's Counsel contacted Tara Norfleet with Benefit One to inquire as to coverage and was directed to Richard Haas of Cincinnati Bell.

In trying to resolve the "health care" coverage problem, Plaintiff's Counsel spoke to Mr. Haas, as directed to by Tara Norfleet, whose name and information was given to Plaintiff's Counsel by Defendant's Counsel.

On July 15, 2003, Plaintiff's Counsel was surprised to receive correspondence from Defendant's Counsel to not contact Dick Haas as to the medical benefits issue. Defense Counsel mistakenly believes that anyone employed by Cincinnati Bell is her client. (See Attachment #4)

The substance of the matter is whether Plaintiff will incur any monetary loss for payment of back premiums as a result of not having any health insurance in that it has been "up in the air" since January, 2002.

Plaintiff's Counsel responded to Defense Counsel on July 15, 2003. (See Attachment #5) Apparently, Defendant is in control of this issue and now wants supporting documentation as to

Plaintiff's request for reimbursement of "back premiums" but does not want the Plaintiff to contact the exact individual who has the information which is Mr. Haas.

It is clear that the information they seek is readily accessible from "another source" as set forth in Federal Civil Procedure Rule 26(b)(2)(i), which is Mr. Haas. Defense Counsel, by their own actions, has prevented the resolution of this issue.

Further, Plaintiff's Counsel, on July 17, 2003, explained the "calculation theory" and again in an effort to remove this issue of discovery and also informed Defendant's Counsel that a resolution could result in this being a non-issue as to damages. (See Attachment #6) If Plaintiff does not owe any back premiums then the issue is rather moot.

Plaintiff's position on this issue has been confusing and their own actions have caused the problems for which they now seek a remedy.

## PLAINTIFF'S CALCULATION OF PAST AND FUTURE MEDICAL EXPENSES

Plaintiff respectfully asks this Court to consider the above argument as it relates to his past and future medical expenses. In that Defendant has failed to see that the health insurance issue be resolved since October 31, 2002, the Plaintiff has been unable to seek medical attention. Therefore, he has nothing to base a "possible calculation".

Plaintiff, in response to Defendant's interrogatories, supplied a list of physicians that Plaintiff has seen since 1995. (See Attachments #7 & #8) Plaintiff signed medical authorizations for the following physicians:

    Dr. Robert Heiliger
    Dr. Irvin Silverstein
    Dr. Douglas Reed

Defendant received those records and stated they may use those records in correspondence dated August 21, 2003 to Plaintiff. The releases signed by Plaintiff were for any and all records, which would include any "past medical" expenses. (See Attachment #9)

Simple logic would dictate that Defendant is in possession of all information as to past medical billing, which would be used in "calculating" damages and, as a result of the previous argument, Plaintiff has been unable to seek treatment. If Cincinnati Bell is in the dark on these issues, it is a result of their own obstruction and failure to use all the information obtained during the discovery process.

Further, this Court's Order striking Plaintiff's use of an expert witness on September 3, 2003 makes the claim of future medical expenses moot. This case clearly now revolves around the issue of reinstatement of Plaintiff's employment by Defendant and back wages.

## TAX RETURNS

Plaintiff has produced any and all tax information in his possession and in his control.

As a result of Plaintiff's wrongful termination, Plaintiff was unable to pay his mortgage. As a result of a foreclosure action, Plaintiff was required to relocate. All of the numerous requests for records by Defendant's Counsel required Plaintiff to search through storage boxes for his 1998 thru 2000 tax returns. Plaintiff was unable to locate his 2001 tax return but again upon the "repeated demands" of Defendant's Counsel, the Plaintiff agreed to search and it was stated that if the tax return was located, it would be given to Defendant. Defendant's Counsel filed the motion to compel one week later. Plaintiff was not able to locate the tax return until September, which has since been sent to Defense Counsel.

Defense Counsel has consistently used the argument that they are entitled to all the above records (tax returns from 1998 to 2001) to "discover" whether the Plaintiff has "mitigated" his

damages. It is unclear to Plaintiff as to how the duty to mitigate existed in 1998, 1999 and 2000 when Plaintiff was wrongfully discharged in November, 2000.

Defendant itself cited *U.S. v. Interamerican College of Physicians and Surgeons, Inc.*, 1999 U.S. Dist. LEXIS 15746 (S.D. N.Y. 1999). (See Exhibit F of Defendant's Memorandum) This case stands for the premise that the approach to back pay and mitigation is well established in the Title VII cases. In this case, Defendant filed a motion to compel seeking evidence as to earnings after termination. The key is that the Plaintiff's earnings after termination were admissible as to mitigation.

Here Cincinnati Bell has sought income information from 1998 through 2001. Plaintiff argues that the earnings information of 2001 may lead to the discoverable evidence necessary under the above case.

Plaintiff further contends that these "earnings issues", while being debated, clearly would have been resolved pursuant to Local Civil Rule 37.1 through an informal telephone conference with the Magistrate herein. However, Defendant chose to file their motion to compel in defiance of the spirit and intent of this Rule.

### DEFENDANT'S DESIRE TO KNOW HOW MUCH MONEY DOES PLAINTIFF HAVE REMAINING FROM HIS LUMP SUM BENEFIT RETIREMENT

Again, Defendant seeks information not calculated to lead to admissible evidence. The lump sum retirement payment is not earnings of the Plaintiff and is not admissible for the purpose of mitigation. Defendant claims they have the right to "explore" how this payment "impacted" his claim for damages. The logic is that since he had $114,000.00, he only looked for a "handful of jobs".

Is it not equally arguable that if he had all of his $114,000.00 on hand, he failed to use it to mitigate his damages? He would have hired an employment agency to find him other employment. Defendant would then argue if he did not spend the money, he failed to use it to mitigate his damages. If Plaintiff used the funds to live on, Defendant would argue this is why he has not found employment because he did not need the money. Either way, the Plaintiff has failed to mitigate his damages.

It was further explained to Defendant that the parties, under Local Civil Rule 16.3 and under Federal Civil Rule 26(f), are required to discuss settlement.

This Court has the discretion under Local Rule 16.3(1) upon request to assign to mediation and settlement. It is clear that the ability of Plaintiff to conduct settlement negotiations would be seriously compromised if he were required to disclose how much money he has on hand.

Under Federal Civil Rule 30(D)(3), the Plaintiff could have suspended the deposition for the time necessary to make a motion for an order as it relates to this issue in that it is Plaintiff's belief that the question was one to unreasonably annoy or oppress the Plaintiff.

The deposition in this matter was conducted on two separate days in excess of the time limits. On the first day (July 14, 2003), the deposition was with the use of a court reporter. On the second date (August 22, 2003), the Defendant used a video camera and recording devices. Although Plaintiff did not object, it was believed that this constituted a pattern of harassment by Defendant. Again, this issue would have been resolved by the use of Local Rule 37.1.

Plaintiff respectfully requests that Defendant's Motion to Compel be denied for the foregoing reasons and that he be awarded his costs and attorneys fees for defending this Motion

and that a telephone conference be used with the Magistrate herein to properly resolve these issues.

                                                  s/ Timothy J. Deardorff
                                                  Timothy J. Deardorff  (0006308)
                                                  Attorney for Plaintiff
                                                  2645 Erie Avenue, Suite 41
                                                  Cincinnati, Ohio  45208
                                                  (513) 872-7900/Fax: (513) 281-6760
                                                  E-Mail:  tjdorff@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Katherine C. Morgan and David A. Skidmore, Attorneys for Defendant, 2200 PNC Center, 201 E. Fifth Street, Cincinnati, Ohio  45202.

                                                  s/  Timothy J. Deardorff
                                                  Timothy J. Deardorff   (0006308)
                                                  Attorney for Plaintiff
                                                  2645 Erie Avenue, Suite 41
                                                  Cincinnati, Ohio  45208
                                                  (513) 872-7900/Fax: (513) 281-6760
                                                  E-Mail:  tjdorff@aol.com