**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| HARRY ARMSTRONG, | : | Case No.: C-1-01-817 |
| | : | |
| Plaintiff, | : | Judge Spiegel |
| | : | Mag. Judge Sherman |
| v. | : | **DEFENDANT CINCINNATI BELL** |
| | : | **TELEPHONE'S MEMORANDUM IN** |
| | : | **SUPPORT OF ITS MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| CINCINNATI BELL TELEPHONE, | : | |
| | : | |
| Defendant. | : | |

**I.   INTRODUCTION**

Plaintiff Harry Armstrong admits that he flew into a rage in his workplace and threatened to kick his Cincinnati Bell co-worker's "motherfucking ass." John Walker, the target of Armstrong's threats, was so unnerved that he called his supervisor at home and told him he was afraid to report to work the next day if Armstrong was going to be there. Following an investigation, Cincinnati Bell concluded that Armstrong acted impermissibly and that his employment should be terminated. However, the Company allowed Armstrong to remain on paid leave for approximately two months until he qualified for retirement benefits.

Indisputably, workplace violence is a very real danger in our society today. As many as "twenty workers in the United States are murdered each week, and about one million are assaulted every year."[1] Within the past decade, employers have been forced to grapple with a sharp increase in incidents of workplace violence.[2] A disgruntled employee in Chicago recently made national headlines when he entered his workplace in a rage and shot and killed six

---

[1] A. Whitten and D. Mosley, "Caught in the Crossfire: Employer's Liability for Workplace Violence," 70 Miss. L. J. 505, 505-07 (Winter 2000) (citations omitted).

[2] *See, e.g.*, J.M. Lawrence, Number of Workplace Murders on the Rise Over Last Decade, Boston Herald, December 27, 2000, available in LEXIS, News Group File.

coworkers.³ Obviously, employers risk serious legal exposure if they fail to react to threats of violence like those made by Armstrong.

This is a case where the threats of violence in the workplace are undisputed. Nevertheless, Armstrong alleges that his termination was somehow the result of unlawful discrimination. The record is devoid of any evidence to support Armstrong's discrimination claims. The bottom line is that no reasonable jury could conclude that Cincinnati Bell intentionally discriminated against Armstrong. This case should be dismissed on summary judgment.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     Armstrong's Employment At Cincinnati Bell.

Armstrong worked as a "repair splicer" for Cincinnati Bell. (Affidavit of Brian Keating at ¶ 2, attached as Exh. A). As a splicer, Armstrong was responsible for the repair of telephone cable, lines and terminal equipment. (Pl. Depo. at 101-102).⁴ During the course of his employment, Armstrong received regular pay increases, training, awards and recognition, and fair evaluations. (Pl. Depo. at 107, 112, 113-15, 117-121; Def. Exh 15).⁵

### B.     Cincinnati Bell Warns Armstrong To Control His Temper.

In the months leading up to Armstrong's threats against Walker, Cincinnati Bell warned Armstrong that he needed to control his temper and that failure to do so could result in termination. On May 15, 2000, the Company placed Armstrong on a performance development plan, which was set forth in writing and communicated to Armstrong during a counseling session conducted by his supervisor. (Pl. Depo. at 122-25; Def. Exh. 17). The performance

---

³ Bennie Currie, *Worker Opens Fire at Chicago Warehouse; 7 Dead, Including Gunman*, The Associated Press State & Local Wire, August 27, 2003, available in LEXIS, News Group File.

⁴ Pages of Plaintiff's deposition referenced in this Memorandum in Support are attached as Exhibit B.

⁵ Defendant's exhibits to Plaintiff's deposition referenced in this Memorandum in Support are attached as Exhibit C.

development plan identified learning "to be cool in a crisis" and handling problems with a "clear perspective" as required areas of improvement. (Pl. Depo. at 124; Def. Exh. 17). Armstrong was required to undergo training on self-discipline. (Def. Exh. 17). He understood that failure to meet these goals could result in termination of his employment. (Pl. Depo. at 125).

Despite Cincinnati Bell's explicit warnings, Armstrong's temper continued to be a problem on the job. On October 3, 2000, Armstrong was placed on yet another performance improvement plan. (Pl. Depo. at 126-28; Def. Exh. 18). Once again, Cincinnati Bell identified "emotional control" as a required area of improvement. (*Id*.) Armstrong signed the plan and once again understood that failure to improve could result in termination. (Pl. Depo. at 126; Def. Exh. 18).

    **C.**    **Armstrong Threatens To Kick Co-Worker John Walker's "Motherfucking Ass."**

On November 8, 2000 - just one month after being counseled about his temper and placed on the second performance improvement plan - Armstrong erupted in the workplace. His co-workers, John Walker and Ray Bauer, were engaged in a conversation about politics. (Pl. Depo. at 137). Armstrong attempted to join in on the conversation and flew into a rage when he felt Walker was excluding him. (Pl. Depo. at 142). He threw off his cap and coat and advanced toward Walker, screaming profanities and threats. (Pl. Depo. at 142, 144-47). He repeatedly threatened that he was "going to kick [Walker's] mother fucking ass."[6] (Pl. Depo. at 147-48).

Walker remained seated during the entire incident and never made any threats or threatening gestures towards Armstrong. (Pl. Depo. at 144, 152, 161; Affidavit of John Walker

---

[6] Although he admits he threatened to kick Walker's "motherfucking ass," Armstrong testified at his deposition that he was too "ashamed" to repeat all of the profanities and threats he made against Walker during the incident. (Pl. Depo. at 152-155).

at ¶ 4, attached as Exh. D). Lawrence Cotton, a co-worker who witnessed the incident, patted Armstrong's shoulder and urged him to calm down.[7] (Pl. Depo. at 151).

Armstrong's threats made Walker fear for his personal safety. (Walker Affid. at ¶¶ 5-6). Walker called his supervisor at home that night and told him that he was afraid to report to work the next day if Armstrong was going to be there.[8] (Walker Affid. at ¶ 5).

### D. Cincinnati Bell Investigates And Concludes That Armstrong Has Acted Impermissibly.

After Walker reported Armstrong's alleged threats, the Company conducted an investigation. The investigation included obtaining written statements from employees who witnessed the incident. (Deposition of S. Haaser at 12-13).[9] Each witness agreed that Armstrong was the aggressor. (See Witness Statements, attached as Exh. G). Armstrong was also given the opportunity to provide a written statement. (Pl. Depo. at 177). He admitted in his written statement that he "erupted," "unleash(ed) and vent(ed)" upon Walker, and that he wanted Walker to feel "hurt, pain, and suffering." (Def. Exh. 19).

As a result of its investigation, Cincinnati Bell's Vice President of Human Resources, and its Director of Labor Relations and Safety, decided to terminate Armstrong's employment. (Keating Affid. at ¶ 5). This decision was communicated to Armstrong in late November of 2000. (Pl. Depo. at 177-79). However, the Company allowed Armstrong to remain on paid leave for approximately two months in order for him to qualify for retirement benefits. (Pl. Depo.

---

[7] Although not a material issue of fact, Mr. Cotton testified during his deposition that he grabbed Armstrong by both arms and forcefully pushed him backwards, away from Walker. (Deposition of L. Cotton at 9). Pages of Mr. Cotton's deposition referenced in this Memorandum in Support are attached as Exhibit E.

[8] Walker was still afraid to be in the same room with Armstrong when Armstrong's counsel requested to take Walker's deposition in July 2003, over two and a half years after Armstrong's threats. (Walker Affidavit, ¶ 6).

[9] Pages of Mr. Haaser's deposition referenced in this Memorandum in Support are attached as Exhibit F.

at 179; Keating Affid. at ¶ 5). Armstrong received a lump sum retirement benefit of $114,000. (Pl. Depo. at 182).

### E.   Armstrong's Union Concludes That Armstrong Was Properly Terminated.

Armstrong had the opportunity to grieve and arbitrate his termination under the Company's collective bargaining agreement. (Pl. Depo. at 211-212). A grievance was filed challenging his termination. (*Id*.) After reviewing the facts, the Union ultimately concluded that Armstrong's threats against Walker were "clearly prohibited by the Company's rules" and that Cincinnati Bell's actions toward Armstrong were not motivated by discrimination. (Pl. Depo. at 212-14; Def. Exhs. 31, 33). Accordingly, the Union declined to refer the matter to arbitration. (*Id*.)

## III.   ARGUMENT

### A.   The Standard For Summary Judgment.

Summary judgment should be granted when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In cases where the plaintiff fails to establish the existence of an element essential to his case, summary judgment is required. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show an absence of evidence to support the nonmoving party's case. *Hartsell v. Keys*, 87 F.3d 795, 799 (6th Cir. 1995), *quoting Celotex Corp.*, 477 U.S. at 325. The nonmoving party "must present more than a mere scintilla of evidence in support of her position; the [nonmoving party] must present 'evidence on which the jury could reasonably find for [her].'" *Hartsell*, 87 F.3d at 799, *quoting Anderson v. Libby Lobby, Inc.,* 477 U.S. 242, 252 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,*

964 F.2d 577, 582 (6th Cir. 1992), *quoting Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986).

>   B.  **Armstrong's Discrimination Claims Must Be Dismissed As A Matter Of Law.**
>
>   1.  The Standard for Discrimination Claims.

Armstrong's Complaint alleges discrimination pursuant to the ADEA, Title VII and Chapter 4112 of the Ohio Revised Code (hereinafter collectively referred to as "discrimination claims"). In order to survive summary judgment, Armstrong must, as a first step, establish a *prima facie* case.[10] *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973); *Barnett v. Dept. of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998). If a *prima facie* case is established, the employer must articulate a legitimate non-discriminatory reason for its action. (*Id.*) Once the employer articulates its reason for the action, any inference of discrimination disappears from the case. (*Id.*) A trial only becomes necessary if the plaintiff can show that the reason proffered by the employer is a pretext for discrimination. (*Id.*) At all times, the burden is on the plaintiff to show that the employer intentionally discriminated against the plaintiff. (*Id.*)

In this case, even when the facts are construed in a light most favorable to Armstrong, he cannot demonstrate a *prima facie* case. In addition, even if Armstrong could get past the initial hurdle of stating a *prima facie* case, he has no evidence that Cincinnati Bell's stated reason for terminating his employment, i.e., his threats of violence in the workplace, was a pretext for intentional discrimination. For both of these reasons, summary judgment should be granted in favor of Cincinnati Bell.

---

[10] The Ohio Supreme Court has held that federal case law addressing discrimination is applicable in deciding cases under O.R.C. § 4112. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. OCRC*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981).

2.  Armstrong Cannot Prove a *Prima Facie* Case of Discrimination.

Armstrong cannot establish a *prima facie* case of discrimination because he has no evidence that he was replaced by someone outside the protected class. *See, e.g., Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (2002).[11] Indeed, Armstrong admits that he has no idea whether he was replaced at all, let alone by someone outside the protected class. (Pl. Depo. at 315). In fact, the undisputed testimony of Brian Keating, Vice President of Human Resources for Cincinnati Bell, is that Armstrong was not replaced. (Keating Affidavit at ¶ 6). Instead, Armstrong's duties were redistributed among the remaining employees on his crew. (*Id.*)

The Sixth Circuit has explained that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or *when the work is redistributed among other existing employees already performing related work*." *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1989) (emphasis added); *Cushman-Lagerstrom v. Citizens Insurance Co. of America*, Case No. 01-2690, 2003 U.S. App. LEXIS 15635 at * 22 (6th Cir. July 30, 2003) (copy attached as Exh. H). Because Armstrong cannot show he was replaced by someone outside the protected class, he fails to establish a *prima facie* case on his discrimination claims and summary judgment should be granted.

3.  Armstrong Cannot Prove Pretext.

Even if it is assumed solely for the sake of argument that Armstrong could establish a *prima facie* case, his discrimination claims cannot survive summary judgment for the additional reason that he cannot prove pretext. *McDonnell Douglas*, 411 U.S. at 805; *Parks v. City of Chattanooga*, 2003 U.S. App. LEXIS 14471 at *21 (6th Cir. July 16, 2003) (copy attached as

---

[11] Armstrong offers no evidence to suggest that the traditional *prima facie* requirements should not be applied in this case.

Exh. I). There is absolutely no evidence from which a reasonable jury could conclude that Cincinnati Bell's actions were a pretext for discrimination.

The facts behind Armstrong's termination are simple and undisputed. Armstrong admits he threatened violence in the workplace. (Pl. Depo. at 125-28). He even admits that he was on notice from Cincinnati Bell that he needed to better control his temper when he lost control and threatened to kick Walker's "motherfucking ass." (Pl. Depo. at 125-28, 142, 144-48; Def. Exh. 17, 18). As such, Armstrong admits that Cincinnati Bell had a legitimate reason for terminating his employment.

Court after court has repeatedly recognized that threats of violence in the workplace are legitimate grounds for discharge. *See, e.g., Green v. Burton Rubber Processing, Inc.*, 30 Fed. Appx. 466, 471 (6th Cir. Feb. 21, 2002) (copy attached as Exh. J); *Sullivan v. Rover Valley School Dist.*, 197 F.3d 804, 813-814 (6th Cir. 1999); *Carilli v. Mutual of Omaha Insurance Co.*, 67 Fed. Appx. 133 (3rd Cir. June 6, 2003) (copy attached as Exh. K); *Kahn v. United States Secretary of Labor*, 64 F.3d 271, 279 (7th Cir. 1995); *Rivera-Aponte v. Rest. Metropol # 3, Inc.*, 338 F.3d 9 (1st Cir. 2003); *Cochran v. Columbia Gas of Ohio, Inc.*, 138 Ohio App. 3d 888, 894, 742 N.E.2d 734, 739 (Franklin Cty. 2000); *Thomas v. Bd. of Review*, No. CA 1951, 1981 Ohio App. LEXIS 12319 (Richland Cty. July 29, 1981) (copy attached as Exh. L); *Opara v. Carnegie Textile Co.*, 26 Ohio App. 3d 103, 106, 498 N.E.2d 485, 489 (Cuyahoga Cty. 1985); *Meriweather v. AT&T Corp.*, No. 1:98-CV-3698-TWT, 10 Am. Disabilities Cas. (BNA) 1246, 2000 U.S. Dist. LEXIS 10622 at *8-9 (D. Ga. Jan. 25, 2000) (attached hereto as Exh. M); *Clark v. Runyon*, 218 F.3d 915, 919 (8th Cir. 2000); *Thomas v. The Habitat Co.*, 213 F.Supp.2d 887, 895 (N.D. Ill. 2002).

The Sixth Circuit has refused in discrimination cases to put the employer in the "tenuous position" of retaining a potentially violent employee. *See, e.g., Green*, 30 Fed. Appx. at 471. Indeed, one needs only to glance at recent headlines or turn on the news to see that the risks of allowing a potentially violent employee to remain on the job can be catastrophic. If Cincinnati Bell had allowed Armstrong to remain in the workplace after learning of his threats, the Company would have jeopardized the safety of its other employees and, in so doing, potentially exposed itself to negligent retention or even intentional tort claims.

Armstrong offers no evidence, because none exists, that behind Cincinnati Bell's desire to ensure the safety of its workplace was some malevolent, secret intent to discriminate against Armstrong. He admits that, following his threats, the Company allowed him to remain on paid leave until such time as he qualified for retirement benefits. (Pl. Depo. at 179). He offers no explanation, because none exists, as to why a Company motivated by discriminatory animus would do him this favor. Without evidence of pretext, summary judgment should be granted in favor of Cincinnati Bell on all of Armstrong's discrimination claims.

    4.    <u>Armstrong's State Law Discrimination Claims Are Barred as a Matter of Law for Additional Reasons</u>.

        a)    *Armstrong's state law discrimination claims pursuant to Chapter 4112 of the Ohio Revised Code must be dismissed because he had the opportunity to grieve and arbitrate his discharge.*

Armstrong's discrimination claims under Chapter 4112 of the Ohio Revised Code must be dismissed as a matter of law because they are barred by Armstrong's prior grievance of his termination. Plaintiffs who have had the opportunity to arbitrate an employment action are precluded from bringing legal claims for the same action under Ohio's anti-discrimination statute. *Hopkins v. United Parcel Service*, 2000 Ohio App. LEXIS 443, at *5-8 (Hamilton Cty.

Feb. 11, 2000) (attached hereto as Exh. N); *Sutterlin v. Mansfield Plumbing Products, Inc.*, 2001 Ohio App. LEXIS 1466, at *4 (Ashland Cty. Mar. 26, 2001) (attached hereto as Exh. O).

Ohio Revised Code § 4112.14(C) provides that:

> The causes of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code **shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.**

O.R.C. § 4112.14(C) (emphasis added).

In this case, Armstrong had the opportunity, and did in fact, grieve his discharge. (Pl. Depo. at 212). Accordingly, his state law discrimination claims must be dismissed.

### b) *Armstrong's state law age discrimination claim is barred by Ohio's election of remedies doctrine.*

Armstrong's Complaint includes a claim for age discrimination pursuant to the ADEA and O.R.C. §§ 4112.02(N) and 4112.99. (*See* Def. Exh. 35). Prior to filing this lawsuit, Armstrong filed a charge with the EEOC alleging, among other things, that his termination was the result of age discrimination. (Def. Exh. 36). The EEOC issued a no probable cause finding. (Def. Exh. 39).

Armstrong's prior EEOC charge bars him from pursuing his state law age discrimination claim before this Court. The Ohio General Assembly has determined that an individual alleging age discrimination under Ohio law must choose between pursuing either an administrative remedy or a civil remedy with the Court.[12] This "election of remedies doctrine" is set forth in O.R.C. § 4112.08, which states in pertinent part:

---

[12] Ohio law is clear that the filing of either an EEOC charge or an OCRC charge triggers the election of remedies doctrine. *See, e.g., Schwartz v. ComCorp, Inc.*, 91 Ohio App. 3d 639, 647, 633 N.E. 2d 551 (Cuyahoga Cty. 1993). This is consistent with Ohio Administrative Code 4112-3-01(D), which provides that a charge filed with the EEOC is "deemed filed" with the OCRC on the date it is received. OAC §4112-3-01(D).

> …any person filing a charge under (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code.

(Id., emphasis added).[13]

The Supreme Court of Ohio has expressly recognized the election of remedies doctrine. In *Smith v. Friendship Village of Dublin*, 92 Ohio St. 3d 503, 751 N.E.2d 1010 (2001), the court explained that when a plaintiff institutes a state age discrimination claim in court after having filed an administrative charge, the court claim is barred by R.C. § 4112.08:

> These provisions relating to age discrimination demonstrate that the General Assembly was aware that individuals might attempt to commence both administrative and judicial proceedings pursuant to R.C. Chapter 4112. **So, in clear language, the General Assembly expressed its intent that an election be made. The General Assembly has specifically limited an individual's ability to bring both an administrative and civil proceeding in the context of age discrimination.**

92 Ohio St. 3d at 506 (emphasis added).

Ohio state and federal courts have held that the election of remedies doctrine set forth in O.R.C. § 4112.08 applies to age discrimination claims, such as Armstrong's, that are brought pursuant to either O.R.C. § 4112.02 or § 4112.99. *Vinson v. Diamond Triumph Auto Glass, Inc.*, 149 Ohio App. 3d 605, 608, 778 N.E.2d 149, 150 (Montgomery Cty. 2002); *Schwartz v. Comcorp, Inc.*, 91 Ohio App. 3d 639, 647, 633 N.E.2d 551, 557 (Cuyahoga Cty. 1993); *Balent v. National Revenue Corp.*, 93 Ohio App. 3d 419, 421-424, 638 N.E.2d 1064, 1065-1066 (Franklin Cty. 1994); *Talbot v. Anthem Blue Cross and Blue Shield*, 147 F. Supp. 2d 860, 863 (S.D. Ohio

---

[13] The election of remedies doctrine is also explicitly set forth in O.R.C. § 4112.02(N), which states, in pertinent part: "A person who files a civil action under this division is barred, with respect to the practices complained of…from filing a charge with the commission under section 4112.05 of the Revised Code."

2001); *Pozzobon v. Parts for Plastics*, 770 F. Supp. 376, 379 (N.D. Ohio 1991). Accordingly, Armstrong's state law age discrimination claim must be dismissed as a matter of law.

> c) *In addition, Armstrong's state law age discrimination claim is barred by the statute of limitations.*

Armstrong's state law age discrimination claim is subject to a 180-day statute of limitations. O.R.C. 4112.02(N); *Oker v. Ameritech Corp.*, 89 Ohio St.3d 223, 224, 729 N.E.2d 1127 (2000) (claims brought pursuant to either O.R.C. § 4112.02 or § 4112.99 are subject to 180-day statute of limitations). Here, Armstrong was terminated from his position of Repair Splicer in November of 2000, but allowed to remain on paid leave until he qualified for retirement benefits approximately two months later. (Pl. Depo. at 177-79). He did not file his Complaint until December 3, 2001. As such, his state law claim of age discrimination pursuant to O.R.C. §4112.02(N) and §4112.99 is clearly time-barred. *Oker*, 89 Ohio St. 3d at 224.

### III.   CONCLUSION

The undisputed evidence is that Armstrong threatened violence in the workplace and was discharged because of it. Armstrong cannot state a *prima facie* case and he has no evidence that Cincinnati Bell, in its efforts to protect its workplace from his admitted threats, somehow intentionally discriminated against him. Moreover, Armstrong's discrimination claims pursuant to Chapter 4112 of the Ohio Revised Code are barred on additional, independent grounds. Summary judgment should be granted in favor of Cincinnati Bell on all of Armstrong's claims.

Respectfully submitted,

s/ Katherine C. Morgan
Katherine Cook Morgan (0068184)
David A. Skidmore, Jr. (0056045)
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202-4182
(513) 651-6800
kmorgan@fbtlaw.com

Trial Attorneys for Defendant Cincinnati Bell Telephone Company

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2003 a copy of the foregoing, Defendant Cincinnati Bell Telephone's Memorandum in Support of its Motion for Summary Judgment, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

s/ Katherine C. Morgan
Katherine Cook Morgan (0068184)
David A. Skidmore, Jr. (0056045)
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202-4182
(513) 651-6800
kmorgan@fbtlaw.com

Trial Attorneys for Defendant Cincinnati Bell Telephone Company

CinLibrary/1314842.2