# EXHIBIT C

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE SOUTHERN DISTRICT OF OHIO
 3                        WESTERN DIVISION
 4
 5    -----------------------------------------
                                             :
 6    HARRY ARMSTRONG,                       :
                                             :
 7             Plaintiff,                    :
                                             :
 8        vs.                                :    CASE NO.
                                             :    C-1-01-817
 9    CINCINNATI BELL TELEPHONE,             :
                                             :
10             Defendant.                    :
                                             :
11    -----------------------------------------
12
13
              DEPOSITION OF:     HARRY J. ARMSTRONG, II
14
              TAKEN:            By the Defendant
15                              Pursuant to Agreement
16            DATE:             July 14, 2003
17            TIME:             Commencing at 9:30 a.m.
18            PLACE:            Offices of Frost Brown Todd
                                2200 PNC Center
19                              201 East 5th Street
                                Cincinnati, Ohio  45202
20
              BEFORE:           Nancy A. Burns
21                              Notary Public - State of Ohio
22
23                     PLEASE INSERT THESE
24                     PAGES IN YOUR ORIGINAL
25
```

**Ace Reporting Services  (513) 241-3200**
**30 Garfield Place, Suite 620  Cincinnati, Ohio  45202**

DEFENDANT'S
EXHIBIT

15

7-14-03

( Documentation Summary ( Required for Outstanding , Below Average and Unacceptable ) ) ARM 000090

**Performance Dimensions**

**Quality of Work**

Harry has been on Disability from 1/13/98 until 10/20/98. I have little to base my 1998 Performance Appraisal on.

**Quantity of Work**

See above.

**Job Knowledge**

Harry has done very well with station repair and some cable repair. However he needs to work on a complete knowledge of cable trouble. This will require some additional training.

**Responsibility / Dependability**

The fact that Harry has had to adapt to become a universal Technician has been difficult for him. The fact that Harry has missed so much work has not helped.

**Interpersonal Relationship**

Harry gets along great with everyone. Harry communicates well with myself, and others. Harry is very considerate to his customers.

Review of Company procedures ( Does the Employee acknowledge and understand the following ? If not, review sections 61 , 62  or 63 of Management Administrative Guidelines of Code of Conduct Booklet with the employee and check reviewed block - ▬ Reviewed )

| | | | | | |
|---|---|---|---|---|---|
| 1. Company EEG Commitment | Yes ☐ | Reviewed | 5. Tuition Aid Plan | Yes ☐ | Reviewed |
| 2. Internal Complaint Procedure | Yes ☐ | Reviewed | 6. Geographic Plan | Yes ☐ | Reviewed |
| 3. Job Transfer Plan | Yes ☐ | Reviewed | 7. Career Counseling | Yes ☐ | Reviewed |
| 4. Job Transfer Plan Reports | Yes ☐ | Reviewed | 8. Code of Conduct | Yes ☐ | Reviewed |

**Supervisor's Comments**

**Employee's Comments**

When  Completed Please Return to Personnel , 102 - 296

PR-55
( REV. 1 - 97 )

CINCINNATI  BELL  TELEPHONE
NON-MANAGEMENT JOB PERFORMANCE APPRAISAL

✓ARM 000089

- ☐ 6 MONTH APPRAISAL
- ■ 12 MONTH APPRAISAL
- ☐ SPECIAL APPRAISAL

| Employee's Name : | Armstrong, Harry | | Department : | Customer Service Operations | | | Location : | 10020400 |
|---|---|---|---|---|---|---|---|---|
| Title : | Splicer | S.S. No. | 301 50 4720 | N.C.S. Date | 07/28/75 | Start Date of Current Assignment : | | |
| Current Wage : | At Max | Proposed Rate : | | Effective Date : | 01/15/1999 | Return to Personnel by : | 01/08/98 | |

| Performance Dimensions | Value | Performance Achieved [ check one ] | | | | | Earned Points |
|---|---|---|---|---|---|---|---|
| | | Outstanding (O) | Above Average (AA) | Average (A) | Below Average (BA) | Unacceptable (U) | |
| Quality of Work - consider accuracy, neatness, thoroughness, organization use of time, manner in which cust- omers / clients are treated. | 30% | 120 | 90 | ■ 60 | 30 | 0 | 60 |
| Quantity of Work - consider amount of work normally produced and timeliness of meeting production goals | 25% | 100 | 75 | ■ 50 | 25 | 0 | 50 |
| Job Knowledge - consider the extent to which an employee understands and has mastered the skills, functions, procedures and operations associated with the cur- rent assignment with consideration given to the training provided and time in present assignment. | 15% | 60 | 45 | 30 | ■ 15 | 0 | 15 |
| Responsibility / Dependability - consider the employee's ability to carry through assignments to completion with minimal super vision, to meet established dead lines, their willingness to accept res- ponsibility and to work overtime. ex tent to which employee follows established safety practices and procedures and extent to which they protect Company property. | 15% | 60 | 45 | 30 | ■ 15 | 0 | 15 |
| Interpersonal relationships - consider the extent to which the employee cooperates with others how instructions are accepted and followed, ability to accept feedback. | 15% | ■ 60 | 45 | 30 | 15 | 0 | 60 |
| Overall Performance | 100% | 356 - 400 | 256 - 355 | 156 - 255 | 56 - 155 | 0 - 55 | 200 |

| Attendance During Appraisal Period : | Occurrences : | ■ | 191 | | Punctuality / PTA : Occurrences : | | 0 |
|---|---|---|---|---|---|---|---|

Days    1    Days    Why ?    ☐ Record - Why ?

Wage Increase Approved -    ☐ Yes    ■ Not Applicable

Appraising Supervisor's Signature : _____    Title : _____ Field Repair Manager – Area 1    Date : 12/15/99

Department Approval : _____    Title : _____ Director of Field Repair Operations    Date : 12-17-98

Employee's Signature ( does not imply agreement ) _____    Date :

# ORIGINAL

**ATTACHMENT A**

NAME: _Harry Armstrong_ _____ Review Period: _4-30_ to _5-28_

**Performance Development Planning Worksheet**

This worksheet may be used during any review period for development purposes.
Please add additional pages as necessary.

| Step 1: Team Leader and Technician Review Performance | | | From the summary columns of the competency matrix and scorecard, identify which areas are strengths and which represent development opportunities. Attach a copy of the competency matrix, scorecard, etc. | | | |
|---|---|---|---|---|---|---|
| Performance Metrics | 30-Day Objective | 60-Day Objective | 90-Day Objective | Previous Period | Current Period | Current Objective |
| % productivity | 77% | 82% | 82% | 61.74% | 73.9% | 82% |
| % of repeaters | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Step 2: Analyze Period Performance Objectives. Prioritize Development Opportunities, and Review Details. | | | From the list of development opportunities above, select those that are most critical to the achievement of performance objectives to be addressed in this period. Write them down next to the performance objective to which they apply. Identify who is responsible for each and task completion deadlines. | | | |
| Performance Objective:<br><br>Related Competency(s): | - Creat a higher level of confidence<br>- To handle the unexpected better | | | | | |
| Development Opportunity #1: | #1 Training, ADSL & Advanced Splicing<br>#2 Training video (Self Discipline) | | | | | |
| Action Item(s) / Improvement Tool(s): | #1 Better equipped to work thru ADSL/cable problems.<br>#2 To be cool in crisis | | Responsibility: Discuss wt Team Leader upon completion<br>Completion Date: Aug 6, 200 | | | |
| Results: | To be better equipped to take action quicker & handle the problems wt a clear perspective. | | | | | |

✓ ARM 000239

DEFENDANT'S EXHIBIT

17

7-14-03

**ATTACHMENT G**

## Individual Performance Development Plan Notification

This is to notify _Harry Armstrong_ that you have
(tech name)

failed to meet **the minimum requirements for the productivity and/or quality team goals for three (3) consecutive award periods.**

Effective _May 15th_ you will be placed on an individual performance improvement plan.   (Date)

## Performance Improvement Evaluation Period

The Individual Performance Improvement plan evaluation period is 3 award periods.

If you **meet your minimum goals** at the end of the Performance Improvement evaluation period, _August 6th_ you will be **taken off** the Performance _(see Attachment)_ Improvement Plan.   (Date)

If you **fail to meet your minimum goals** at the end of the Performance Improvement evaluation period, you may be considered for reassignment or possible dismissal. _(see attachment)_

## Performance Development Planning Worksheet

This worksheet may be used during any review period for development purposes. Please add additional pages as necessary.

From the summary columns in scorecard, identify which are strengths and which represent development opportunities (attach a copy of the, scorecard, etc.).

| Performance Metrics | Previous Period | Current Period | Current Objective | 30-Day Objective | 60-Day Objective | 90-Day Objective |
|---|---|---|---|---|---|---|
| Efficiency Rating | 61.74% | 73.95% | 82 % | 77. % | 82 % | 82 % |
| Repeat Rate | % | % | % | % | % | % |
| Observations | % | % | % | % | % | % |

Employee Signature _Declined_       Date _5-15-00_

Union Representative Signature _T.G. Vot_       Date _5-15-00_

Team Leader Signature _Lee Boothe_       Date _5-15-00_

✓ ARM 000240

5/11/00                                                                                     9

If you meet your minimum goals during the 12 week Individual Performance Development Plan you will be taken off the Performance Improvement Plan on _7-6-80_ .
(Date)

If you fail to meet your 30, 60 and 90 day objectives at the end of the Performance Improvement evaluation period, you may be considered for reassignment or possible dismissal.

✓ARM 000241

ATTACHMENT B

# Individual 12 Week Performance Improvement Plan
## CSO – Installation & Repair Technicians

September 1999

| TEAM LEADER RESONSIBLE FOR: | PRIOR TO START | WEEK #1 | WEEK #2 | WEEK #3 | WEEK #4 | WEEK #5 | WEEK #6 | WEEK #7 | WEEK #8 | WEEKS #9-12 |
|---|---|---|---|---|---|---|---|---|---|---|
| MEETINGS w/ TECH & UNION | X 5/15 | – | – | – | – | – | – | – | – | – |
| W/TECH | – | X 5/22 | X Vacation | X 6/7 | X | X | X | X | X | X |
| RIDE TOUR W/ TECH | – | FULL DAY 5/22 | ½ DAY Vacation | – | ½ DAY 6/13 | – | ½ DAY 6/27 | – | ½ DAY 7/11 | – |
| OFF LINE TRAINING W/ TECH | – | – | ½ DAY Vacation | ½ DAY 6/7 | – | ½ DAY 6/21 | – | – | – | – |
| SCHEDULING TECH TO RIDE W/ an "A" PERFORMER | * | * | * | * | * | * | * | – | – | – |
| CONSULTING W/TECHNICAL TRAINING | ADSC 5/17-18 Splicing 6/13,14/5 | X | * | * | * | * | * | * | * | – |
| SCHEDULING QA REVIEWS/ RIDETOURS/ TRAINING | – | * | * | * | * | * | * | * | * | – |
| * As Needed | | | | | | | | | | |

✓ARM 000242

ORIGINAL

## ATTACHMENT A

NAME: _Harry Armstrong_        Review Period: _10/3/00_ to _12/26/00_

**Performance Development Planning Worksheet**

This worksheet may be used during any review period for development purposes.
Please add additional pages as necessary.

| Step #1: Team Leader and Technician Review Performance. | From the summary columns in the competency matrix and scorecard, identify which are strengths and which represent development opportunities (attach a copy of the competency matrix, scorecard, etc.) | | | | | |
|---|---|---|---|---|---|---|
| **Performance Metrics** | **30-Day Objective** | **60-Day Objective** | **90-Day Objective** | **Previous Period** | **Current Period** | **Current Objective** |
| % productivity | 70% | 76% | 82% | 59.78% | 64.53% | 82% |
| % of repeaters | Oct. | Nov. | Dec. | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Step #2: Analyze Period Performance Objectives, Prioritize Development Opportunities, and Review Details. | From the list of development opportunities above, select those that are most critical to the achievement of performance objectives to be addressed in this period. Write them down next to the performance objective to which they apply. Identify who is responsible for each and set completion deadlines. |
|---|---|
| Performance Objective: Related Competency(s): | - Create a higher level of Confidence - To handle the unexpected better |
| Development Opportunity #1: | #-1 1 on 1 traing w/t Steve Vanoy in field #-2 Training Self Descipline (Emotional Control) |
| Action Item(s) / Improvement Tool(s): | #1 Better equipped to handle the unknown #2 to be Cool in Crisis    Responsibility: Discuss w/ TL upon Completion    Completion Date: Nov. 11, 2000 |
| Results: | To be better equipped to take action quick & handle the problems w/ a Clear perspective. |

✓ ARM 000236

DEFENDANT'S
EXHIBIT

_18_

_7-14-03_

## ATTACHMENT C

### Individual Performance Development Plan Notification

This is to notify *Harry Armstrong* that you have
(tech name)

failed to meet **the minimum requirements for the productivity and/or quality team goals for three (3) consecutive award periods.**

Effective *October 3rd* you will be placed on an individual performance improvement plan.   (Date)

### Performance Improvement Evaluation Period

The Individual Performance Improvement plan evaluation period is 3 award periods.

If you **meet your minimum goals** at the end of the Performance Improvement evaluation period, *DECEMBER 36* you will be **taken off** the Performance Improvement Plan.          (Date)

If you **fail to meet your minimum goals** at the end of the Performance Improvement evaluation period, you may be considered for reassignment or possible dismissal.

### Performance Development Planning Worksheet

This worksheet may be used during any review period for development purposes. Please add additional pages as necessary.

From the summary columns in scorecard, identify which are strengths and which represent development opportunities (attach a copy of the, scorecard, etc.).

| Performance Metrics | Previous Period | Current Period | Current Objective | 30-Day Objective | 60-Day Objective | 90-Day Objective |
|---|---|---|---|---|---|---|
| Efficiency Rating | 59.78 % | 64.53% | 82 % | 70 % | 76 % | 82 % |
| Repeat Rate | % | % | % | % | % | % |
| Observations | % | % | % | % | % | % |

Employee Signature *Harry Armstrong*          Date *10/3/00*

Union Representative Signature *DECLINED*          Date *10/3/00*

Team Leader Signature *[signature]*          Date *10/3/00*

✔ ARM 000237

5/11/00                                                                                    9

If you meet your minimum goals during the 12 week Individual Performance Development Plan you will be taken off the Performance Improvement Plan on *12-26-00*.

                                                          (Date)

If you fail to meet your 30, 60 and 90 day objectives at the end of the Performance Improvement evaluation period, you may be considered for reassignment or possible dismissal.

ARM 000238

Case 3:01-cv-008 17-SAS-DSF    Document 44-5    Filed 09/30/2003    Page 13 of 30



## Write a message

From: CHARMS1022@webtv.net (HARRY J. ARMSTRONG)

To: CWA 4400 / PRESIDENT TIM DONAHUE / V.P. MEL SMITH
/ STEWARDS : GARY VATER / WESLEY BANKS / FAX
#681-8976

Subject: NOVEMBER 8, 2000 / 3RD LETTER

IN REFERENCE TO THIS DATE.
( A WEDNESDAY EVENING AFTER
WORKING HOURS ) I RECALL SIX (6) TECHS INCLUDING MYSELF,
EITHER CLOSING-OUT, SIGNING-OFF, OR PICKING-UP ANOTHER JOB
THROUGH THE FAS.

THERE WAS A GENERAL CONVERSATION GOING ON, THE SUBJECT
OR NATURE OF WHICH I DO NOT RECALL, BUT JOHNNY WALKER
SEEMED TO CARRY THE OVER-RIDING INTEREST IN WHATEVER THE
TOPIC WAS, AND OPINIONS WERE SHIFTING BACK AND FORTH
ACROSS THE ROOM. THE TWO NIGHT TECHS SEEMED TO BE LEAST
INVOLVED AS THEY WERE FOCUSED ON FASING FOR ANOTHER JOB.

AS THE CONVERSATION CONTINUED, I TRIED AT INTERVALS TO
OFFER MY OPINION ON THE MATTER, AND NOTICED BEFORE LONG
THAT EACH TIME, JOHN WOULD TALK OVER ME, OR RAISE HIS VOICE
IN ORDER TO SQUELCH MINE, OR SO IT SEEMED. I WAS NOT CERTAIN
THAT I WAS PERCEIVING THE DYNAMICS OF WHAT WAS GOING ON,
AND BEGAN TO WONDER IF HE WAS DOING THIS INTENTIONALLY.

I BEGAN TO THINK OF FORMER ENCOUNTERS AND CONVERSATIONS
WITH HIM, DURING DIFFERENT SITUATIONS, AND HIS DEMEANOR
DURING THOSE TIMES, WHEN I WOULD FIND A WAY TO SHORTEN OR
END THEM, PREFERRING TO FOCUS ON THE JOB AT HAND WITHOUT
CONVERSATION, BECAUSE I FOUND HIS WAY OF TALKING TOWARD
ME QUITE OFFENSIVE, AS HE WOULD, ( IN SO MANY WORDS ) BE, IN
MY OPINION, TALKING 'DOWN' TO ME, OR RAISE HIS VOICE, WHILE AT
THE SAME TIME, SUGGESTING HOW 'GREAT' HE WAS. I COULD THINK
OF NO HUMILITY HE HAD EVER EXPRESSED, AND I BEGAN TO THINK
HE KNEW EXACTLY WHAT HE WAS DOING, AND SINCE I HAD ALWAYS
FOUND WAYS ONE-ON-ONE TO SOFTEN OR EXTINGUISH PREVIOUS
ENCOUNTERS THAT I PERCEIVE WERE HEADING IN THE WRONG
DIRECTION, I FELT EACH TIME MADE HIM FEEL STRONGER, AND THAT
PERHAPS I WAS EITHER WEAK OR POSSIBLY FEARED HIM, IN HIS
MIND, AND BECAUSE OF MY DESIRE AND EFFORTS TO BE
EASY-GOING, AND TO DISAGREE WITHOUT BEING DISAGREEABLE, HE
WAS DEVELOPING WRONG IMPRESSIONS, AND A FALSE 'READ' OF

✓ ARM 000141

DEFENDANT'S
EXHIBIT
19
7-14-03

ME.

AS I SAT PONDERING THIS MATTER, I BEGAN TO FUME. AT THIS POINT, I THOUGHT OF ONE OTHER TIME HE AND I HAD PASSED EACH OTHER NEAR THE SNACK MACHINES AT THE GARAGE, ( AND THIS WAS DURING A TIME WHEN I HAD DECIDED NOT TO SPEAK OR EVEN ACKNOWLEDGE HIS PRESENCE AS LONG AS HE SEEMED TO CARRY THIS ATTITUDE TOWARD ME, AS I KNEW I HAD NEVER SHOWED ANY DISRESPECT OR MALICE TOWARD HIM ), AS WE PASSED OUR EYES LOCKED, AND HE CLICKED HIS TONGUE INSIDE HIS JAW, THE SAME WAY IT IS DONE WHEN A PERSON IS CALLING A DOG. I WAS TEMPTED TO STOP AND ADDRESS HIS MEANING BEHIND THIS, BUT DECIDED TO LET IT GO, ONCE MORE.

AFTER PONDERING ALL THIS FOR A FEW MOMENTS, I TRIED TO SHAKE IT OFF, AND FORGET IT, AND THINK NO EVIL OF IT, AND I AGAIN TRIED TO OFFER MY OPINION OF WHATEVER THE CONVERSATION WAS ABOUT, THIS TIME JOHN, LOOKED AT ME AND MY EARS HEARD HIM SAY, "YOU'RE IRRELEVANT", AND HE SIMULTANEOUSLY MADE A SWIPING GESTURE WITH HIS LEFT HAND, FROM MID-ABDOMEN TOWARD HIS LEFT HIP-SIDE, AS 'IF' TO SAY, SHUT-UP, OR GET OUT OF THE CONVERSATION. AT THIS POINT, EVERYTHING I HAD JUST FINISHED THINKING ABOUT AND TRIED 'HARD' TO DISMISS SUDDENLY RETURNED ALL AT ONCE, AND I DETERMINED THAT 'ENOUGH WAS ENOUGH', AND NOT THINKING ABOUT CONSEQUENCES, MY FUTURE, TOMORROW, OR A BETTER WAY TO HANDLE THIS, ( IN MY MIND THIS WAS A NEW MILLENIEM, AND 'THIS' WAS STILL GOING ON ),

I FELT MY BLOOD-PRESSURE RISE, I STOOD UP, LOOKED DIRECTLY AT HIM, ( WE WERE ON OPPOSITE SIDES OF A TABLE ). I TOLD HIM NOT TO EVER TELL ME 'I WAS IRRELEVANT', AND PROCEEDED TO USE LOT OF PROFANITY THAT I AM NOT IN THE HABIT OF USING, TO WHICH I AM DEFINITELY NOT PROUD. I WOULD NOT BE PLEASED TO KNOW MY CHILDREN USES SUCH LANGUAGE, SO I KNOW, WITH ALL THE INFLUENCES AROUND THEM, THAT TRAINING HAD TO START WITH ME, AND IF I WAS IN THE HABIT OF USING SUCH LANGUAGE, IT WOULD BE BOUND AT SOME POINT TO SLIP OUT AROUND THEM. PERSONALLY, I FIND PROFANE LANGUAGE IN ANY CONTEXT VERY OFFENSIVE, BUT WHO AM I TO CHANGE THE WORLD, I'LL BE DOING WELL TO CHANGE OR CONTROL THINGS ABOUT MYSELF THAT NEED WORK.

ANYWAY, I HAD NOTICED THAT EACH ENCOUNTER JOHN AND I HAD, AND BECAUSE I WOULD EITHER SOFTEN THE TONE, OR FIND A WAY TO BACK OUT OF THE TOPIC, HE APPEARED TO GAIN A SINCE OF INCREASING SUPERIORITY AND STRENGTH. I FELT THAT HE WAS NOW FEELING QUITE STRONG AND SUPERIOR, AND WAS USING THIS TIME TWO-FOLD;
(1) AS A TEST TO FINALLY PROVE FOR HIS OWN SATISFACTION THAT HE COULD CONTROL, HANDLE, MANIPULATE, OR MASTER ME; AND (2) THAT HE WOULD USE THIS OCCASION TO PUT-ME-DOWN AND EMBARRASS ME IN FRONT OF HIS FRIEND RAY BAUER, AND PERHAPS EVERYONE ELSE. I HAD HAD ENOUGH, AND WITHOUT THINKING ALLOWED THE MISTREATMENT, HURT, PAIN, AND ANGER THAT I HAD CONTROLLED EVER SINCE JOHN WALKER JOINED OUR CREW IN

✓ARM 000142

JUNE, (I BELIEVE), TREATMENT THAT I FELT I HAD DONE NOTHING TO
ANYONE TO DESERVE, TO ERUPT, AND THAT NOW HE WOULD GET A
'TASTE OF HIS-OWN MEDICINE'. AT SOME POINT, I TOLD HIM THAT HE
DESERVED WHAT HE WAS GETTING THEN, AND HE DROPPED HIS
HEAD AND ADMITTED. (WHETHER HE MEANT IT OR NOT) THAT 'I WAS
RIGHT, HE DID DESERVE THIS'. HE ALSO SAID THAT HE DID NOT SAY
THAT 'I' WAS IRRELEVANT, BUT HAD SAID THAT 'WHAT' I WAS TALKING
ABOUT WAS IRRELEVANT. NOW, WHILE I AM CERTAINLY NO SCHOLAR
OR EINSTEIN, I DO BELIEVE THAT I HAVE PERHAPS JUST ENOUGH
SENCE, IF NOT A LITTLE MORE, TO ENGAGE IN A CONVERSATION
THAT I AM WILLING TO EXPRESS AN OPINION ABOUT WITH A
'RELATIVE' DEGREE OF RELEVANCY, AND WHILE I ADMIT NOT
REMEMBERING WHAT THE TOPIC WAS, I DO NOT ACCEPT THAT A
MEMORY THAT SEEMS TO BE INCREASINGLY GROWING SHORTER
PRETTY FAST (ITS' SCARY), MEANS THAT I CANNOT ENGAGE IN A
DISCUSSION WITH PERTAINANCE AND RELEVANCE TO THE SUBJECT.
(SOMEDAY THIS MAY BE TRUE, GOD FORBID, BUT I DO NOT AND DID
NOT THINK IT IS / OR WAS TRUE AT THE PRESENT TIME).

HOWEVER, AS WE ALL KNOW, IT IS NOT ALWAYS 'WHAT' YOU SAY,
BUT 'HOW' YOU SAY IT, AND QUITE OFTEN, 'WHO' SAYS IT!!! THERE
ARE THINGS, I AM CERTAIN, THAT SOMEONE OF ANY RACE COULD
SAY TO SOMEONE OF ANOTHER RACE THAT WOULD BE PERCEIVED
AS EXTREMELY OFFENSIVE, AND THE SAME THING SAID BY A
MEMBER OF THE SAME RACE WOULD NOT BE PERCEIVED AS
OFFENSIVE AT ALL, AND PERHAPS MIGHT EVEN BE THOUGHT OF AS
FUNNY. AND THERE ARE FRIENDS OF DIFFERENT RACES THAT CAN
SAY 'NORMALLY' OFFENSIVE THINGS TO EACH OTHER AND IT IS
ACCEPTABLE IN WHATEVER SPIRIT IT WAS OFFERED BECAUSE THEY
UNDERSTAND THE MEANING BEHIND WHAT WAS SAID, IF ANY AT ALL,
AND EACH OTHER. UNFORTUNATELY, I CANNOT SAY THIS
REGARDING JOHNNY WALKER, AS MUCH AS I WOULD LIKE TO,
BECAUSE MY 'READ' OF HIM HAS ALWAYS BEEN SUSPECT, NOT
WITHOUT CAUSE. WE ALL HAVE A DEGREE OF INTUITION, WHICH CAN
OFTEN BE FAULTY, BUT ALSO IS OFTEN CORRECT, AND WE USE IT AS
CAUTIOUS GUIDANCE. THEN THERE ARE OTHER THINGS THAT ARE
OPEN AND PLAIN TO SEE, LIKE WORD OR DEED, AND SOMETIMES
'INTENT' CAN BE CLEAR. AS TIME WENT ON, JOHN'S INTENT BECAME
CLEAR TO ME, AND I WAS WARNED ABOUT HIM. AND PERHAPS
ANOTHER.

HE STATED THAT HE HAD SAID 'WHAT' I WAS TALKING ABOUT WAS
'IRRELEVANT' AND NOT 'I', BUT THE 'SCOWL' ON HIS FACE, ALONG
WITH HIS HAND GESTURE, BETRAYED THAT STATEMENT. YET, EVEN
IF IT WERE TRUE, 'HIM' TELLING 'ME' THAT, IN FRONT OF THOSE
PRESENT, AND THE 'WAY' HE DID IT, AND ME 'KNOWING' THIS MAN
HAD NO FRIENDLY FEELINGS TOWARDS ME, AND MEANT ME NO
GOOD, 'NEGATED' THE DIFFERENCE! HE MAY AS WELL HAVE SAID,
'YOU'RE STUPID, SHUT-UP'!

I AM MORE SORRY THAT THIS WHOLE THING HAPPENED, (NOT SO
MUCH FOR MY JOB, MY FUTURE, OR THE CONSEQUENCES, BUT
IDEALLY FOR THE PERSON I SEEK TO BE, AND HOW I WOULD PREFER
TO BE REMEMBERED) BUT APART FROM THAT, SINCE IT HAD
ALREADY BEGUN, I AM MOST SORRY THAT AT THE POINT WHEN HE
ADMITTED THAT HE 'DID' DESERVE IT, THAT I DID NOT STOP THERE,

✓ARM 000143

12/26/2000 18:50 5135317552 ARMSTRONG PAGE 04
Write a message - Wednesday, December 27, 2000 11:36 AM Page 4 of
WebTV Network

Case 1:11-cv-00317-SAS Document 44 Filed 09/30/2003 Page 16 of 30

BUT BEING SO FILLED WITH ANGER FOR ONE INDIVIDUAL, FOR SO LONG (AND PERHAPS A FEW OF HIS WORKING BUDDIES. BUT PRIMARILY HIM) IN SUCH A SHORT PERIOD OF TIME, I CONTINUED TO UNLEASH AND VENT THE BOTTLED FEELINGS THAT I HAD ALLOWED HIM AND A FEW OTHERS TO CREATE, AND NOT REPORTED. I SUPPOSE MY FEELINGS WERE REPORTING, RATHER THAN BEING ABLE TO ENDURE AND ADJUST, COULD BE SEEN AS A SIGN OF WEAKNESS, AND PERHAPS CAUSE ESCALATION OF AN ALREADY UNCOMFORTABLE PROBLEM.

I REMEMBERED HOW SOME OF HIS BUDDIES HAD NOT BEEN TRUTHFUL ABOUT MY WHERE-ABOUTS WHEN THEY WERE SENT TO HELP ME ON A JOB, SAYING THAT I WAS NOT WHERE I WAS SUPPOSED TO BE, EVEN THOUGH I LATER REVEALED THAT I SAW THEM PASS RIGHT BY ME, MARKED THE TIME THEY PASSED, AND WHICH ONE WAS DRIVING.

I REMEMBERED MANY TIMES IN MY PRESENCE THAT THEY WOULD USE SLURS AND PROFANE-SLANG WORDS PRIMARILY ATTRIBUTED AND DEMEANING TOWARD WOMEN, AND SPOKE OF THEIR GUNS, BOW-AND-ARROWS, AND HUNTING AND SHOOTING AND CARVING UP THESE ANIMALS, AS THOUGH THEY WERE INDIRECTLY SPEAKING OF, ABOUT, OR TO ME.

I REMEMBERED HOW JOHN AND PERHAPS OTHERS FELT THAT I DID NOT DESERVE TO HAVE THE BUCKET-TRUCK EVEN THOUGH I WAS THE SENIOR MEMBER PREVIOUSLY, AND NOW THE SECOND SENIOR MEMBER IN THE CREW.

I REMEMBERED THAT RAY BAUER SEEMED UPSET, NOT THAT I HAD BEEN GIVEN HIS BUCKET-TRUCK (WHICH INCIDENTALLY WAS SUPPOSED TO BE OFFERED TO ME BEFORE HE GOT IT, BUT A REASON WAS FOUND AT THAT TIME TO BY-PASS ME, AS WELL AS A NUMBER OF OTHER THINGS DOWN THROUGH THE YEARS THAT I RARELY IF EVER CONTESTED) BECAUSE HE GOT A NEWER, BIGGER, AND BETTER BUCKET-TRUCK. BUT HE SEEMED TO BE UPSET THAT I WAS NOW PARKING INSIDE THE GARAGE, WHERE HE USED TO PARK. SO ONE DAY I SAW HIM GOING TO HIS NEW TRUCK OUT ON THE LOT, LOOKING SOMEWHAT UNHAPPY, HEAD HUNG LOW, (THE WEATHER NOT LOOKING TO PROMISING), AND I TOLD HIM THAT HE LOOKED "LIKE A FISH OUT OF WATER" AND TOLD HIM THAT IF IT WOULD MAKE HIM FEEL BETTER, WE COULD TRADE PLACES, AND I WOULD PARK OUTSIDE, AND HE COULD HAVE 'HIS' INSIDE STALL BACK, HE THEN REVEALED TO ME THAT HIS NEW TRUCK WOULD NOT FIT INSIDE THE GARAGE. BUT RAY AND I HAD ALWAYS HAD VERY GOOD RELATIONS EARLIER, BUT I BEGAN TO NOTICE A NOT-SO-SUTTLE, YET UNSPOKEN CHANGE IN HIS PRESENCE WITHIN THE PAST COUPLE OF MONTHS, AFTER I NOTICED AN INCREASING ASSOCIATION WITH ( WHO ELSE?) JOHNNY WALKER.

I REMEMBERED WHEN WORD GOT OUT THAT JOHN WAS SPEAKING AGAINST ME TO MY FORMER SUPERVISOR. A LOT FLASHED THROUGH ME AT THAT MOMENT, AND I WANTED HIM TO FEEL IF ONLY FOR A SINGLE MOMENT. THE HURT, PAIN, AND SUFFERING THAT I HAD FELT FOR DAYS, WEEKS, AND MONTHS, DUE TO HIM AND A COUPLE OF HIS BUDDIES.

✓ARM 000144

WITHIN RECENT WEEKS, THE TWO BUDDIES ACTUALLY BECAME A LOT FRIENDLIER, AFTER AN INCIDENT WITH THEM ALMOST ERUPTED, REGARDING 'MY WHERE-ABOUTS', AND THEM NOT BEING ABLE TO 'FIND' ME WHEN SENT TO 'HELP'.

BUT JOHN WAS STILL THE SAME, AND I HAD NEVER CONSIDERED REVENGE, BUT IN LIGHT OF WANTING HIM TO EXPERIENCE SOME INNER PAIN, AS I HAD, IT MUST HAVE BEEN PRESENT WITHIN ME, AND I WAS UNAWARE. I CERTAINLY NEVER 'PLANNED' ANYTHING LIKE THIS TO HAPPEN.

HOWEVER, RENDERING WHAT 'I' THINK TO BE JUSTICE, IS 'NOT' MY PREROGATIVE, BUT SOLELY THE PROVIDENCE OF 'THE ONE' WHO WILL ONEDAY JUDGE US ALL.

THIS 'INCIDENT, I TRUST 'HE' WILL FORGIVE. I HAVE REPENTED OF IT. AND I DEFINITELY WISH NO-ONE ANY ILL-WILL, INCLUDING CBT ATTORNEY ANITA CROSS, WHOSE LETTER I FOUND TO BE RATHER UNFRIENDLY IN 'TONE', BIASED, AND JUDGEMENTAL, WHEN SHE DOES NOT KNOW ME. NOR DOES SHE OR COULD SHE KNOW THE INTRACACIES AND DYNAMICS OF WHAT WAS TRULY TAKING PLACE, ESPECIALLY IN THE LIFE OF ANOTHER, WHICH IS OFTEN IMPACTED AND COLORED BY THEIR EXPERIENCES  BACKGROUND, AND UPBRINGING. I WILL NOT ELABORATE, IT IS NOT NECESSARY AT THIS TIME. WE WILL ALL BE JUDGED, 'JUSTLY' OF THAT I AM CERTAIN.

I HAVE HEARD THAT SOMEONE HAD TO RESTRAIN, OR HOLD ME BACK. THIS IS NOT TRUE. ONE TECH DID STAY CLOSE TO ME, PATTING ME ON THE BACK OR SHOULDER, CONTINUALLY ENCOURAGING ME TO FORGET IT, OR CALM DOWN. FURTHERMORE JOHN AND I WERE ON OPPOSITE SIDES OF THE TABLE. IF I INTENDED TO BE PHYSICALLY VIOLENT, DOES IT NOT STAND TO JUST A LITTLE REASON THAT I WOULD HAVE COME AROUND THE TABLE TO GET CLOSER TO HIM.

I HAVE HEARD THAT I THREATENED TO 'KILL'  HIM. THIS IS NOT TRUE. I NOR ANYONE ELSE HAS THE RIGHT TO TAKE ANOTHER'S LIFE, APART FROM THAT GIVEN TO 'GOVERNMENT' BY 'DIVINE' LAW. I CAN THINK OF NO INSTANCE, NOR RAGE THAT I WOULD FEEL JUSTIFIED IN THREATENING TO TAKE THE LIFE OF ANOTHER, EXCEPT ONE; AND THAT WOULD BE IN THE DEFENCE OF MY FAMILY, FRIENDS, OR TO PROTECT SOME DEFENCELESS INDIVIDUAL WHOSE VERY LIFE WAS ENDANGERED BY THE INTENT OF ANOTHER. ( IS THAT ONE OR THREE? )

IF SOMEONE CONTINUES TO PLAY WITH FIRE AND GETS BURNED, IS IT THE FAULT OF THE FIRE, OR IF SOMEONE KEEPS TEASING A DOG (FOR LACK OF A BETTER EXAMPLE AT THE MOMENT) AND GETS BITTEN BY THE DOG, IS IT THE CONDUCT OF THE DOG THAT NEEDS TO BE EXAMINED AND PUNISHED? HOW MUCH RESPONSIBILITY IS ATTRIBUTED TO THE TEASER? WHOSE THREATENING WHO? NOW IF THE DOG BIT THE TEASER WITHOUT PROVOCATION, THEN I WOULD SAY, PERHAPS THE DOG IS DANGEROUS!

✓ARM 000145

I HAD ALREADY SOUGHT MEDICATION FROM MY DOCTOR TO HELP
KEEP ME CALM UNDER STRESS, DUE TO THE GROWING TENSION
ALREADY IN PLACE, AND EVEN MORE SO, DUE TO LOSING ONE
SUPERVISOR, WHOM I GREATLY ADMIRE AND RESPECT, AND WILL
ALWAYS BE GREATFUL TO, AS HE WAS GENERALLY ALWAYS VERY
HELPFUL, AND THOUGHTFUL TOWARDS ME, AND GETTING A NEW
SUPERVISOR WHOM I WAS HEARING A LOT OF 'GHOST STORIES
ABOUT, AND HOW IT WAS THOUGHT THAT HIS PRESENCE WAS
GOING TO IMPACT ME AND MY WORKING CONDITIONS, AS WELL AS
ADD TO THE STRESS I WAS ALREADY EXPERIENCING, FROM THOSE
WHO KNEW HIM, AND THAT JOHN WAS VERY LIKELY TO WIN HIS
FAVOR DUE TO HIS SPLICING ABILITY, AND THE NEW SUPERVISOR'S
'INTENSE' FOCUS AND CONCERN FOR THE TELEPHONE CABLE.

I HAD LONG BEEN CONSIDERING SEEKING DISABILITY TIME AGAIN
AWAY FROM THE JOB, BUT KNOWING THAT I HAD ALREADY BEEN OFF
TWICE FOR EXTENDED PERIODS OF TIME, I RESISTED THE INTENSE
STRESS, AND VERY STRONG URGE, BECAUSE MY DESIRE WAS TO
IMPROVE MY ATTENDANCE RECORD (WHICH I HAVE NEVER BEEN
PROUD OF, YET THE COMPANY CONTINUED TO KEEP ME AND PAY
ME, AND I DO SUPPOSE THAT THE UNION IS DUE A GREAT DEAL
CREDIT AND GRATITUDE IN THIS RESPECT AS WELL), BUT I WANTED
TO CLEAN-UP
MY RECORD IN MY FINAL YEARS WITH THE COMPANY, WHO HAS
('FOR THE MOST PART') BEEN VERY GOOD TO ME. I CAN ONLY 'WISH'
THAT I HAD A RECORD OF VALUE TO MATCH.

HOWEVER, IF I AM GUILTY OF THREATENING CONDUCT, IT WAS ONLY
FOR THE PURPOSE OF REMOVING THE THREATENING CONDUCT
THAT I WAS 'RE-ACTING' TO, 'NEVER' TO INTIATE IT. MY DESIRE IS
PEACE WITH ALL 'IN AS MUCH AS IT POSSIBLE', NOT WAR.

FINALLY, I WISH ALL CONCERNED A HAPPY AND PROPEROUS
HOLIDAY SEASON AND NEW YEAR, FOR THOSE WHO HONOR AND
CELEBRATE THE 'TRUE REASON FOR THE SEASON'!

I HUMBLY AWAIT FINAL JUDGEMENT!

SINCERELY,

*Harry Armstrong*

HARRY J. ARMSTRONG

p.s.– EACH TIME I HAVE RE-READ, I HAVE NOTICED A MISSPELLED
WORD, A MISSING WORD, OR THE WRONG WORD RE: CONTEXT. I ASK
THAT YOU ACCEPT THIS 'FINAL' DRAFT 'WITHOUT PREJUDICE' (SMILE)
AS IS! AS CONTINUED CORRECTIONS HAVE BEEN WEARING ME OUT!!!
I HAVE WORKED AT CORRECTIONS AND TOTAL WIPE-OUTS,
RE-STARTS, AND UNCO-OPERATIVE WEB RESPONSES FROM EARLY
TUESDAY MORNING, ALL DAY, UNTIL 5:30A.M. WEDNESDAY MORNING.
I HOPE NOW I AM THROUGH WITH THIS. THIS IN ITSELF HAS BEEN
PUNISHING ENOUGH!!!



✓ ARM 000146

Communications
Workers of America
AFL-CIO/CLC

20525 Center Ridge Rd. #700
Cleveland, Ohio 44116-3453
440/333-6363
440/333-1491 FAX

Jeff Rechenbach
Vice President – District 4
Illinois, Indiana, Michigan, Ohio and Wisconsin
JRECHENBACH@CWA-UNION.ORG



## MEMO

**TO:**  Tim Donoghue, President, CWA Local 4400

**FROM:**  Henley Johns, CWA Staff Representative

**DATE:**  June 19, 2001

**RE:**  Harry Armstrong - Grievance #02-12-00 - Dismissal

After thorough review of the above-captioned case, I regret to inform you that I am denying your request for arbitration. It is my opinion that an arbitrator would rule against the Union, based on witness statements that Mr. Armstrong did, in fact, challenge Mr. Walker to go outside and, I quote one witness, "kick his _____ _____ ass" more than once. There was also a witness statement that a fellow employee had to intervene and either hold Mr. Armstrong back or step between Mr. Armstrong and Mr. Walker to diffuse the situation.

I can respect the Local's opinion that there have been other cases that workplace violence has resulted in only suspension for other workers. In this instance, however, Mr. Armstrong had to be physically restrained by a co-worker which lends itself to a higher degree of force being used.

I am also greatly concerned about the amount of email correspondence that has gone on among the general public, the company, and the Local by Mr. Armstrong which could be used against us in this arbitration case.

I do not find this case to be racially motivated, as Mr. Armstrong suggests. I commend you and your staff; I think the deal that you had originally worked out for a medical/retirement should have been acceptable to Mr. Armstrong, but I certainly understand the company pulling that deal from the table when Mr. Armstrong went outside the proper channels by notifying the outside "world" of his plight.

For the above-captioned reasons, I do not feel the Union would prevail and do not recommend this case for arbitration. You have fifteen (15) days from the receipt of this letter to appeal my decision in writing via certified mail to David Derrig, AAVP. A copy of that appeal must also be sent to me.

/ls

cc:  David Derrig
     Ted Meckler

DEFENDANT'S
EXHIBIT

3 1

ARM 000656

**Communications**            205    Center Ridge Rd. #700        Jeff Rec. enbach
**Workers of America**        Cleveland, Ohio 44116-3453          Vice President -- District 4
**AFL-CIO/CLC**                440/333-6363                        Illinois, Indiana, Michigan, Ohio and Wisconsin
                              440/333-1491 FAX                    JRECHENBACH@CWA-UNION.ORG



July 24, 2001

Timothy M. Donoghue, President
CWA Local 4400
2562 West North Bend Road
Cincinnati, OH   45239

Re:    Harry Armstrong/Dismissal (Local Grievance #02-12-00)
       CWA Local 4400 and Cincinnati Bell Telephone Company
       District No. PA-4-01-32

Dear Tim:

On June 19, 2001, CWA Staff Representative Henley Johns issued a memo on this case
and found that he could not recommend it for arbitration.  It was appealed to my
Administrative Assistant Dave Derrig on June 27, 2001.  Dave denied the appeal on July
2, 2001.  The grievant sent an email message purportedly to Dave, Henley, and our
District Counsel, Ted Meckler on July 17, 2001, although they did not all receive same.  I
am treating that message as an appeal of Dave's decision.

I have now thoroughly reviewed the file.  As a result of that review, I am of the opinion
that both Dave and Henley were correct in their analysis.  I do not believe we would be
likely to prevail in arbitration.  Therefore, I deny the appeal and do not approve this case
for arbitration.

The file reveals that there are witnesses who will state that the grievant challenged a Mr.
Walker to go outside and "kick his --- --- ass" more than once.  Another witness says that
a fellow employee had to intervene and restrain Mr. Armstrong.  This sort of behavior is
clearly prohibited by the Company's rules.  It is the kind of behavior that has often lead
arbitrators to sustain discharges.  Potlatch Corporation and International Woodworkers of
America, 72 LA583 (1979); Robertson Can Company and U.S.W.A. 81 LA569 (1983);
Martin Marietta Aero & Naval Systems and UAW Local 783, 95 LA1105 (1990).  I have
reviewed the grievant's contentions in his lengthy and numerous documentation.  I do not
find these contentions sufficient to overcome the evidence against the grievant.

DEFENDANT'S
EXHIBIT

3ᒾ

✓ARM 000659

In light of the above, I am denying this appeal.

As you know, you and/or Mr. Armstrong have thirty (30) days from notice of my decision to appeal in writing to President Morton Bahr.  Please inform Mr. Armstrong promptly in writing of my decision.

Sincerely,

Jeffrey A. Rechenbach
Vice President

JAR:smz
afl-cio/OPEIU#2

cc:    David F. Derrig, Administrative Assistant to the Vice President
       Henley W. Johns, CWA Representative
       Theodore E. Meckler, District Counsel

✓ARM 000660

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

HARRY ARMSTRONG
6110-A RIDGEACRES DR.
CINTI, OHIO 45237

(Enter above the full name of the plaintiff in this action)

v.

CINCINNATI BELL TELEPHONE
BROADWING
201 EAST FOURTH STREET
CINCINNATI, OHIO 45202

(Enter the above full name of the defendant or defendants in this action)

Judge   4817
Mag.    4860
Journal
Issue
Docketed   BM

Case No. C-1-01   817

SPIEGEL, J.

M.J. SHERMAN

COMPLAINT UNDER
42 U.S.C. 2000e-5(f)(1)

:

I.    **Parties**

(In item A below, place your name in the first blank and place your present address and telephone number (or telephone number where you can be reached) where indicated in the following blanks.)

A.    Name of Plaintiff   HARRY ARMSTRONG

Address   6110-A RIDGEACRES DRIVE

Telephone No. (513) 631-7577

Under 42 U.S.C. 2000e-5(f)(1) suit may only be "brought against the respondent named in the charge" of unlawful employment practice you filed with the Ohio Civil Rights Commission and/or the Equal Employment Opportunity Commission. ATTACH A COPY OF THE CHARGE YOU FILED WITH THE OHIO CIVIL RIGHTS COMMISSION AND/OR THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION TO THIS COMPLAINT. In item B below list the name and address of the employer against whom you filed the charge. In item C below, list the name and address of any other person(s) you named in the charge you filed with the Ohio Civil Rights Commission and/or the Equal Employment Opportunities Commission.

B.    Defendant _____
         (As named in the attached charge)

       Address _____

DEFENDANT'S
EXHIBIT

35

7-19-03

-1-

**IV. Relief**

(*State briefly exactly what you want the Court to do for you*. Make no arguments. Cite no cases or statutes.)

*Harry Armstrong*
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

_____ M 11 26 01 _____
(Date)

*Harry Armstrong*
(Signature of Plaintiff)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **HARRY ARMSTRONG** | : | Civil Action No. |
| **6110-A Ridgeacres Drive** | | |
| **Cincinnati, Ohio 45237** | : | |
| | | |
| **Plaintiff** | : | <u>**COMPLAINT AND JURY DEMAND**</u> |
| **vs.** | | |
| | : | |
| **CINCINNATI BELL TELEPHONE** | | |
| **BROADWING** | : | |
| **201 East Fourth Street** | | |
| **Cincinnati, Ohio 45202** | : | |
| | | |
| **Defendant** | : | |
| | | |
| | : | |

Plaintiff, on information and belief, states for his Complaint against Defendant as follows:

### <u>NATURE OF ACTION</u>

1.    Plaintiff Harry Armstrong, an African American male, who is currently 50 years of age, brings this employment discrimination action against Defendant Cincinnati Bell Telephone Broadwing ("Cincinnati Bell"), under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq., and the comparable state law claim pursuant to the Ohio Civil Rights Act sections 4112.02(N) and 4112.99 of the Ohio Revised Code; and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 88 2000e et seq., as amended in 1991 and Chapter 4112 of the Ohio Revised Code.

## PARTIES

Plaintiff Harry Armstrong is a 50 year old African-American male citizen of the United States and is a resident of the County of Hamilton, State of Ohio.

Defendant Cincinnati Bell employs more than 20 persons within Hamilton County, Ohio and is an employer within and the meaning of state and federal law.

## ADMINISTRATIVE COMPLIANCE

On or about March 8, 2001, and within the 180 days of the occurrence of the acts complained of, Plaintiff filed charges of employment discrimination against Defendant Cincinnati Bell with the Equal Employment Opportunity Commission (EEOC). On or about August 27, 2001, Plaintiff received a Notice of Right to Sue from the Cincinnati District Office of the EEOC. (Appendix #1)

## FACTUAL ALLEGATIONS

Plaintiff is a male, born January 22, 1951 and is a former employee of Defendant.

Plaintiff began working for Defendant on July 28, 1975, and his employment was terminated by Cincinnati Bell on February 2, 2001.

During the course of his employment, Plaintiff was treated less favorably than similarly situated white male employees.

On November 8, 2000, Plaintiff had a verbal altercation with a fellow employee, Johnny Walker. It is Plaintiff's information and belief that Johnny Walker, white male, is approximately 28 years old. Upon information and belief Johnny Walker had approximately five years seniority with Defendant.

Plaintiff was terminated and Johnny Walker received no disciplinary action.

Defendant's discriminatory conduct is not limited to the foregoing:

2

## COUNT I

Plaintiff realleges the foregoing paragraphs as if fully rewritten.

Defendant's conduct in terminating Plaintiff and failing to terminate or discipline Johnny Walker violates Title VII of the Civil Rights Act as amended.

Defendant's conduct was intentional, willful and wanton.

As a direct and approximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which he is entitled to compensation.

## COUNT II

Plaintiff incorporates herein all of the allegations set forth above as if fully restated herein.

Defendant's decision to terminate Plaintiff, denied him equal opportunity in the terms and conditions of employment, imposing unwarranted discipline.

Defendant's age discrimination has deprived Plaintiff of equal employment opportunities in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq., and the comparable state law claim pursuant to the Ohio Civil Rights Act §4112.02(N) and §4112.99 of the Ohio Revised Code.

At all times material herein, Defendant has acted with malice towards Plaintiff Armstrong and with conscious disregard of Plaintiff Armstrong's rights.

**WHEREFORE**, Plaintiff Harry Armstrong demands judgment against Defendant Cincinnati Bell as follows:

1. An order granting front pay and/or reinstatement of Plaintiff to his position as "splicer";

2.     A judgment for compensatory damages for economic loss and back pay equal to the value of Plaintiff's lost wages and benefits since the date of his termination;

3.     A judgment for Plaintiff's non-economic damages for his emotional distress in an amount to be determined at trial;

4.     A judgment for punitive damages to be determined at trial;

5.     An award of Plaintiff's reasonable attorney's fees and costs; and

6.     A judgment for such other relief in law and equity to which Plaintiff is entitled under circumstances.

Respectfully submitted,

Harry Armstrong
6110-A Ridgeacres Drive
Cincinnati, Ohio 45237
(513) 631-7577

## JURY DEMAND

Plaintiff demands trial by jury of all issues raised herein.

Harry Armstrong

4

## DISMISSAL AND NOTICE OF RIGHTS

To: Harry L. Armstrong
6170 Ridgeacres Drive   Units
Cincinnati, Ohio 45237-4919

From: Equal Employment Opportunity Commission
550 Main Street, Suite 10-019
Cincinnati, Ohio 45202

[ ]
*On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 221A10275 | Legal Duty Officer | 513-684-2851 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues

[ ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]   While reasonable efforts were made to locate you, we were not able to do so.

[ ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

[ ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Wilma L. Javey
Wilma L. Javey

8/24/2001
*(Date Mailed)*

Enclosure(s)

cc:   Cincinnati Bell Telephone Co.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 221A10275 |

_____ _State or local Agency, if any_ _____ and EEOC

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Harry Armstrong | (513) 631-7577 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 6110 Unit A Ridgeacres Dr., Cincinnati, OH 45237 | | 01/22/1951 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| CINCINNATI BELL | Cat D (501 +) | (513) 397-1480 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 201 East Fourth Street, Cincinnati, OH 45202 | | 061 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☒ DISABILITY ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 11/08/2000 | 02/02/2001 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I. I am 50 years of age, African American, and I have a disability. On November 8, 2000, Mike Wallace (Supervisor, 40's, White) told me not to report for work the next day. I was on disability leave from that day until February 2, 2001, when I received my last paycheck. Steve Hauser (Human Resources Manager) told me in November, 2000 that I would be on disability leave until January, 2001, when I would be eligible for retirement. No one has given me further information to clarify my employment status with the company.

II. Steve Hauser and Dick Haus (Benefits Manager) have not given me a reason why I have been placed on disability leave and why I am not back to work.

III. I believe I have been discriminated against because of my age, race, and disability in violation of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act. A much younger White co-worker was similarly situated and he was treated differently.

✓**ARM 000638**

DEFENDANTS EXHIBIT 7-14-03

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | _Harry Armstrong_ |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date                    Charging Party (Signature) | 3-8-01 |

EEOC FORM 5 (Rev. 07/99)

✓ **FILE COPY**

EEOC Form 161 (10/96)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

*Fite*
*EEO*
*Charges*
*Harry*
*Armstrong*

| | |
|---|---|
| To: Harry J. Armstrong<br>6110 Ridgeacres Drive - Unita<br>Cibcinnati, Ohio 45237-4919 | From: Equal Employment Opportunity Commission<br>550 Main Street, Suite 10-019<br>Cincinnati, Ohio 45202 |

[  ]   *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a)*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 221A10275 | Legal Duty Officer | 513-684-2851 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Wilma L. Javey_                               8/24/2001
Wilma L. Javey                                   *(Date Mailed)*

Enclosure(s)

cc:    Cincinnati Bell Telephone Co.

DEFENDANT'S
EXHIBIT
39
7-14-03

✓ ARM 000082