# EXHIBIT J

Service: **Get by LEXSEE®**
Citation: **30 Fed. Appx. 466**

30 Fed. Appx. 466, *; 2002 U.S. App. LEXIS 2959, **

CHARLES GREEN, Plaintiff-Appellant, v. BURTON RUBBER PROCESSING, INC.; M. A. HANNA CO., Defendants-Appellees.

Case No. 00-5475

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

30 Fed. Appx. 466; 2002 U.S. App. LEXIS 2959

February 21, 2002, Filed

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE. 98-00014. Hull. 03-13-00.

**DISPOSITION:** AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant former employer for alleged discrimination in violation of the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). The United States District Court for the Eastern District of Tennessee granted summary judgment in favor of the employer and dismissed without prejudice the employee's pendent state law claims. The employee appealed.

**OVERVIEW:** The employee suffered from a mental illness. He became enraged with his supervisors for failing to provide a work schedule consistent with the recommendations of his psychiatrist and, while away from work, he expressed to numerous people that he had thoughts of killing his supervisors. After he checked himself out of the hospital against the advice of his doctor, a nurse practitioner informed the employer of the employee's threats. After confirming that information, the employer fired the employee. The employee then sued. Agreeing with the district court, the appeals court held when the employee threatened to kill his supervisors, he disqualified himself from his job and from protection under the ADA. Further, since the employee was fired because of his threats of violence, he could not establish a prima facie case of retaliatory discharge. Finally, deciding the issue on different grounds than the district court, the appeals court held that once the employee was fired, he was not entitled to FMLA leave.

**OUTCOME:** The court affirmed the summary judgment granted to the employer and the district court's dismissal without prejudice of the employee's pendent state-law claims.

**CORE TERMS:** supervisor, summary judgment, doctor, disability, work week, discharged, Medical Leave Act, Disabilities Act, state law, accommodate, reasonable accommodation, threats of violence, potential harm, terminated, violent, mental illness, psychological, psychiatrist, retaliation, therapist, weekends, advice, kill, non-movant, violating, jeopardy,

failed to demonstrate, discrimination claim, restraining order, prima facie case

**LexisNexis (TM) HEADNOTES - Core Concepts -** ♦ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review
HN1 ⬥ A federal appeals court reviews de novo a district court's grant of summary judgment, using the same standard under Fed. R. Civ. P. 56(c) used by the district court. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
Civil Procedure > Appeals > Standards of Review > De Novo Review
HN2 ⬥ Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Like the district court, an appellate court must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN3 ⬥ To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN4 ⬥ Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions
HN5 ⬥ To succeed on a claim of discrimination under the Americans with Disabilities Act, the plaintiff must show that he (1) is an individual with a disability; (2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) was discharged solely on account of the disability. More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Qualified Individuals With a Disability
HN6 ⬥ The Americans with Disabilities Act defines a "qualified individual with a disability" as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C.S. § 12111(8). This definition is qualified by the requirement that an employee not pose a direct threat to the health or safety of other individuals in the workplace. 42 U.S.C.S. § 12113(b). A direct threat is a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation. 42 U.S.C.S. § 12111(3). Assessment of the significance of the risk involves four factors: (1) duration of risk: (2) nature and severity of potential harm; (3) likelihood that potential harm will occur; and (4) imminence of potential harm. 29 C.F.R. § 1630.2(r). More Like This Headnote

Labor & Employment Law > Discrimination > Disability Discrimination > Qualified Individuals With a Disability
HN7 ⬥ The United States Court of Appeals for the Seventh Circuit has held that the Americans with Disabilities Act (ADA) does not require an employer to retain a

potentially violent employee because such a requirement would place the employer on a razor's-edge--in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. If an employer fires an employee because of the employee's unacceptable behavior, the fact that the behavior was precipitated by a mental illness does not present an issue under the ADA. And the United States Court of Appeals for the Sixth Circuit has followed the Seventh Circuit, holding that while the ADA protects qualified employees, "threatening other employees disqualifies" an employee from a job. Employees who threaten violent acts cannot be reasonably accommodated, and the ADA's duty to accommodate does not run in favor of those employees. More Like This Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave
HN8 ⬇ The Family and Medical Leave Act (FMLA) grants benefits to employees. 29 U.S.C.S. § 2612(a)(1). Once an employee is discharged, he is no longer an employee, and he is thus not entitled to leave under the FMLA. More Like This Headnote

**COUNSEL:** For CHARLES GREEN, Plaintiff - Appellant: Charlton R. DeVault, Jr., Kingsport, TN.

For BURTON RUBBER PROCESSING, M. A. HANNA COMPANY, Defendants - Appellees: Ingrid Blackwelder Erwin, Nexsen, Pruet, Jacobs & Pollard, Greenville, SC.

**JUDGES:** BEFORE: BATCHELDER and COLE, Circuit Judges; BECKWITH *, District Judge.

* The Honorable Sandra S. Beckwith, United States District Court for the Southern District of Ohio, sitting by designation.

**OPINIONBY:** ALICE M. BATCHELDER

**OPINION:** [**2] [*467]

**ALICE M. BATCHELDER, Circuit Judge.** Charles Green appeals the district court's order granting his employer's motion for summary judgment on Green's claims of discrimination and retaliation under the Americans with Disabilities Act and the Family and Medical Leave Act. Green also appeals the dismissal without prejudice of his pendent state law claims. For the following reasons, we affirm the decision of the district court.

**BACKGROUND**

The defendant, Burton Rubber Processing, Inc. n1 ("Burton Rubber") employed the plaintiff, Charles Butch Green ("Green"), as a lab technician at its plant in Jonesborough, Tennessee. Green suffered from mental illness and frequently missed work because of his illness. Because of his inability to handle stress, he made numerous [*468] requests for leave under the Family and Medical Leave Act (FMLA). Burton Rubber's record in dealing with those requests prior to the termination of Green's employment leaves a lot to be desired, but the record demonstrates that Green was able to obtain the leave to which he was entitled, albeit with some difficulty, and these requests for FMLA leave are not the subject of this appeal.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Burton Rubber Processing, Inc. recently changed its name to M.A. Hanna Co. For consistency, we refer to the company as Burton Rubber.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - [**3]

The nature of Burton Rubber's business required that its employees work more than forty hours per week; the required overtime included weekends. Green obtained a letter from his psychiatrist advising that Green should be restricted to a work week of forty hours with weekends off. Burton Rubber accommodated the forty-hour restriction, but was not able always to accommodate the no-weekend restriction. Green then obtained a new letter from the psychiatrist, advising that Green's work week should not exceed forty hours, and that out of every seven-day work week, he should have two consecutive days off.

This lawsuit arises out of the course of events that followed a meeting Green had with his supervisors during which he received a copy of his new work schedule. The schedule split his work week so that he would have to work some weekends in order to reach forty hours per week. Green angrily questioned this schedule. One of Green's supervisors informed him that he (the supervisor) "had been told to break up [Green's] work week."

Green became very upset and following this meeting he met with his therapist and confided that he had had thoughts of shooting his supervisors. On his therapist's [**4] advice, he checked himself into Woodridge Hospital. The evidence demonstrates that Green was visibly enraged and told doctors and nurses there that he was having thoughts of killing three of his supervisors. Green's wife had reported that he was "pacing the floors and talking to himself," and that "he was very agitated and that he voiced a desire to kill all of his employers." The hospital was aware that Green owned several guns.

Unsatisfied with the treatment he was receiving at the hospital, Green left against his doctor's advice. He did not tell anyone at the hospital where he was going. A nurse practitioner at the hospital called Burton Rubber to inform a manager or supervisor of Green's threats. When Green's supervisors were advised of the threats, they called Woodridge Hospital in an attempt to confirm the validity of the information. Hospital personnel refused to discuss the matter, but arranged to have one of the doctors call Burton Rubber. That doctor advised the Burton Rubber supervisors that he was breaching patient confidentiality requirements because he had a duty to notify them that Green had said he "wanted to kill the 3 supervisors who had confronted him that morning." [**5] The doctor recommended calling the police, which the supervisors did. They also obtained a restraining order against Green.

Green came to work the following day. He claims that he was planning to request FMLA leave for four days. His supervisors asked him to leave the premises, and Green left without any confrontation. Two days later, Burton Rubber sent Green a letter terminating his employment. The letter stated that the company had no choice but to terminate Green because of his threats of physical violence against company employees.

Subsequently, Green filed this action against Burton Rubber in federal district court, alleging that Burton Rubber had violated his rights under the American with Disabilities Act (ADA) by engaging in discriminatory and retaliatory conduct because of his psychological disability, refusing to accommodate his psychological disability, [*469] and discharging him because of his psychological disability. Green further claimed that Burton Rubber had violated his rights under the FMLA by denying him leave for his mental health condition and by discharging him in retaliation for his assertion of his rights pursuant to FMLA. Finally, Green brought state law claims [**6] of handicap discrimination and retaliation under the Tennessee Human Rights Act and the Tennessee Public Protection Act

Burton Rubber moved for summary judgment. The district court granted the motion. The court held that Green had failed to provide evidence that he was "qualified," a necessary

element of a discrimination claim under the ADA. The ADA protects only "otherwise qualified" employees. An employee who threatens other employees is not qualified, and the undisputed evidence established that Green had made threats against his supervisors. Because Green was not qualified for the job, Burton Rubber did not have to "reasonably accommodate" him under the ADA. The district court also stated that Burton Rubber was allowed to fire Green for unacceptable behavior, i.e., making threats, and that the fact that the behavior was precipitated by mental illness does not present an ADA issue. Regarding Green's FMLA claims, the district court held that although Green had established a prima facie case, he failed to demonstrate that Burton Rubber's legitimate, nondiscriminatory reason for terminating him--Green's threats against the supervisors--was pretextual. The district court dismissed [**7] Green's state law claims without prejudice. Green timely appealed.

## ANALYSIS

### A. Standard of Review

*HN1* We review de novo a district court's grant of summary judgment, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). *HN2* Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (West 2001). Like the district court, we must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). *HN3* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be [**8] evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). *HN4* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

### B. Americans with Disabilities Act

*HN5* To succeed on a claim of discrimination under the ADA, Green must show that he (1) is an individual with a disability; (2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) was discharged solely on account of the disability. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000). We agree with the district court that Green failed to demonstrate that he was "otherwise qualified" for his job.

[*470] *HN6* The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform [**9] the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This definition is qualified by the requirement that an employee not "pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). A direct threat is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). Assessment of the significance of the risk involves four factors: (1) duration of risk: (2) nature and severity of potential harm; (3) likelihood that potential harm will occur; and (4) imminence of potential harm. 29 C.F.R. § 1630.2(r).

HN7 The Seventh Circuit has held that the ADA does not require an employer to retain a potentially violent employee because "such a requirement would place the employer on a razor's-edge--in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone." *Palmer v. Cir. Court of Cook County*, 117 F.3d 351, 352 (7th Cir. 1997). [**10] The *Palmer* court made it clear that "if an employer fires an employee because of the employee's unacceptable behavior, the fact that the behavior was precipitated by a mental illness does not present an issue under the [ADA]." *Id.* And this circuit has followed *Palmer*, holding that while the ADA protects qualified employees, "threatening other employees disqualifies" an employee from a job. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) (citing *Palmer*, 117 F.3d at 352). n2 We agree with the Seventh Circuit that employees who threaten violent acts cannot be reasonably accommodated, and the ADA's duty to accommodate does not run in favor of those employees. *Palmer*, 117 F.3d at 353.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 *Accord Collins v. Blue Cross Blue Shield of Mich.*, 228 Mich. App. 560, 579 N.W.2d 435, 440-41 (Mich. Ct. App. 1998) (holding that an employer did not violate the ADA when it discharged an employee after discovering that the employee informed her psychiatrist of her plans to kill her supervisor); *Vargas v. Gromko*, 977 F. Supp. 996, 998 (N.D. Cal. 1997) (granting an employer's motion for summary judgment on an employee's ADA claim because the employer terminated the employee based on his threats of violence, which included statements such as "if I had a gun and these three individuals [his supervisors] were in front of me . . . I would have shot them."); *Layser v. Morrison*, 935 F. Supp. 562, 569 (E.D. Pa. 1995) (recognizing an employer's affirmative defense to an employee's ADA discrimination claim because the employee, a police officer, informed his doctor of his thoughts of harming his supervisor).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**11]

The material facts regarding Green's threats are not in dispute. Green admitted himself to Woodridge Hospital following his meeting with his supervisors. He informed his wife, his therapist, his physician, and hospital personnel that he had thoughts of killing his supervisors. He left the hospital against the doctor's advice and without his approval. The hospital staff notified Burton Rubber of Green's threats. Once notified, Burton Rubber investigated the validity of the information and received confirmation from the hospital that the threats had been made. The doctor even recommended a call to the police. Because Burton Rubber did not know where Green was or what his mental condition was at that point, the company called the police. When Green came to work the following day, his supervisors did not know what to expect, and they were apprehensive about his potential for violence. The company also took the precaution of obtaining a restraining order against Green.

We find the principles established in *Palmer*, and cited in *Sullivan*, directly applicable [*471] here. We hold that Green's threats of violence threatened the safety of Burton Rubber's employees; that when he made those [**12] threats, Green disqualified himself from his job at Burton Rubber and from any protection under the ADA. We refuse to place Burton Rubber in the tenuous position of either violating the ADA or retaining a potentially violent employee. Accordingly, we conclude that Burton Rubber lawfully and legitimately terminated Green's employment.

Because we conclude that Green was terminated because of his threats of violence, we also conclude that he cannot establish a prima facie case of retaliatory discharge under the ADA. Accordingly, we affirm the district court's grant of summary judgment regarding Green's ADA claims.

### C. Family and Medical Leave Act

Green claims that he intended to request four days of FMLA leave when he returned to work the day following the threats. He contends that Burton Rubber interfered with the exercise of his FMLA rights pursuant to 29 U.S.C. § 2615(a)(1) n3 when it refused to grant him leave for his most recent struggle with his mental health. He acknowledges in his appellate brief, however, that his right to FMLA leave is contingent upon a ruling that he was discharged in violation of the ADA. We have held his discharge did [**13] not violate the ADA. HN8 The FMLA grants benefits to employees. 29 U.S.C. § 2612(a)(1) ("Subject to section 2613 of this title, an eligible *employee* shall be entitled to a total of 12 workweeks of leave . . ."(italics added)). Once Green was discharged, he was no longer an employee, and he was thus not entitled to leave under the FMLA. See *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 According to 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny" the exercise of an employee's rights under the FMLA.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For the foregoing reasons, rather than on the reasoning of the district court, we affirm the district court's grant of summary judgment to Burton Rubber on Green's FMLA claims.

### CONCLUSION

Accordingly, we AFFIRM the order of the district court granting summary judgment to Burton Rubber on the Green's Americans with Disabilities Act and Family and Medical Leave Act claims. Because no federal claims [**14] remain, we also AFFIRM the district court's dismissal without prejudice of Green's pendent state law claims.

Service: **Get by LEXSEE®**
Citation: **30 Fed. Appx. 466**
View: Full
Date/Time: Thursday, September 25, 2003 - 2:52 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.